```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TENNESSEE
                            WESTERN DIVISION
```
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | No. 13-20157-SHL-dkv |
| ) | |
| OMAR JONES, ) | |
| ) | |
|     Defendant. ) | |

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
_____

On April 25, 2013, the defendant, Omar Jones ("Jones"), was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (ECF No. 1.) Jones was discovered with a firearm on his person in an encounter with a security guard employed by the Memphis Protection Agency ("MPA") at Cambridge Court Apartments in Memphis, Tennessee on November 19, 2012. During the encounter, the security guard stopped Jones, questioned him, performed a pat down, and seized his firearm. Jones was then arrested with the assistance of the Memphis Police Department ("MPD").

Now before the court is Jones's January 15, 2014 motion to suppress the physical and testimonial evidence derived from the seizure and search of Jones on the grounds that the security guard was a state actor who violated Jones's Fourth Amendment

rights. (Def.'s Mot. to Suppress, ECF No. 37.) Specifically, Jones argues that the security guard lacked reasonable suspicion to believe Jones had committed a crime, and thus, the search of Jones was invalid. On January 30, 2014, the government filed a response in opposition to Jones's motion to suppress. The motion was referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 39.)

After several motions to continue the suppression hearing were granted, (ECF No. 43; ECF No. 47; ECF No. 49; ECF No. 51), the court held an evidentiary hearing on May 22, 2014. At the hearing, defense counsel called six witnesses to testify: Memphis Police Officer Brandon Zellous ("Officer Zellous"), Katherine Harris ("Harris"), Security Officer Deric Hoffman ("Hoffman"), Arerecous Taper ("Taper"), Security Officer Mark Hale ("Hale"), and the defendant Jones. As exhibits, the defense introduced four documents into evidence: Officer Zellous's November 19, 2012 MPD Log Sheet ("Officer Zellous's Log Sheet"), (Ex. 1); the affidavit of complaint underlying Jones's arrest warrant ("the affidavit of complaint"), (Ex. 2); the MPD Record of Arrest for Jones ("the Record of Arrest"), (Ex. 3); and Hale's Witness Statement made to the MPD ("the witness statement"), (Ex. 4).

After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and

the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

Jones is a convicted felon on previous charges related to burglary and theft of property and has served time in the Tennessee penitentiary. On November 19, 2012, Jones had recently been released from jail. Jones and Taper, who both testified at the suppression hearing, stated that on the night of November 19, 2012, they got together to visit Jones's sister, Sumayyah Jones ("May"), at the apartment where she was then living. Jones and Taper are cousins and had only recently reunited after not seeing each other since an early age. The apartment where May resided — located in the Cambridge Court Apartment complex at 1415 Terrace Lane, Apartment 8, in Memphis, Tennessee — was leased in the name of Katherine Harris, Jones's grandmother. Harris testified at the hearing that she rented the apartment for her son, Troy Harris, but in November of 2012, May lived in the apartment, where Jones visited her from time to time. Harris was not present on the night of November 19, 2012, and so she could not testify from personal knowledge that Jones visited his sister there on that evening.

Jones and Taper testified that after they visited with May and watched a movie, they left the apartment to deliver a card to a friend who was sick. It was late at night, and they walked along one of the roads on the property of the Cambridge Court Apartments to deliver the card. They testified that as they walked, a nearby group of people they did not know also walked along the same road off to the right. Jones and Taper soon heard a car pull up behind them, and they veered onto the sidewalk to make room for it. Inside the car was Hale, a security guard with MPA.

MPA is a private security company contracted by Cambridge Court Apartments and other businesses throughout Memphis to provide security. Hoffman, who testified at the hearing, is employed as a field supervisor at MPA and described the training requirements and procedures of MPA. Hoffman has worked with MPA since July of 2010 and has been in the security business for ten years. He previously worked as a police officer in the MPD but left due to an injury in the knee. According to Hoffman, security officers at MPA must undergo training in which they qualify to use their weapon and learn cause for detainment, rules of engagement, and laws that apply to private property. The most important training for security guards, in Hoffman's opinion, is learning how to protect themselves. MPA security officers also receive a background check by the Tennessee Bureau

4

of Investigation ("TBI"), which then issues them a license. Security officers must requalify for certification every two years by taking a course taught by certified instructors and again undergoing a background check. MPA does not supply its employees' firearms; security officers must personally purchase the models that MPA recommends. Additionally, MPA security officers are not required to wear a uniform, but they must wear a badge or form of identification ("ID") showing the MPA insignia.

On the subject of detainment, Hoffman testified that while on duty at a private property, MPA security guards can hold a person to validate what the person is doing on the property. Pursuant to Cambridge Court Apartment policy, MPA security officers were asked to stop all individuals walking on its property to identify whether the person was a guest or a resident. When making a stop, security officers ask for an ID and then check to see whether the person has an outstanding warrant by logging onto shelbycountywarrants.org. The purpose of this policy, Hoffman testified, is to prevent break-ins and trespass. If the person has a warrant, the MPA security officer can telephone or flag down a Memphis police officer to transport the person to the police station. Hoffman additionally testified that because security officers and police officers often work in the same high-crime area, they are familiar with

5

each other. However, MPA security officers receive no kick-back or benefit from detaining people that the MPD eventually arrests. Hoffman was not present at the Cambridge Court Apartments on November 19, 2012.

Hale's testimony was consistent with Hoffman's testimony concerning the Cambridge Court Apartment policy that every person should be stopped, asked for identification, and questioned as to whether they are a resident or guest. He added that there had been recent break-ins and incidents of trespassers stealing copper. Hale stated that he stopped every person on the Cambridge Court property in compliance with this policy, and he made multiple stops of other people on November 19, 2012.

When Hale pulled up to Jones and Taper on the night of November 19, 2012, he asked whether the two men had an ID and whether they were a guest or resident pursuant to the aforementioned Cambridge Court Apartment policy. Hale has worked as a security guard for MPA since 2010, and he has worked in security since he was 18 years old. He is now 27 years old. Hale recalled that on November 19, 2012, Jones and Taper were walking near a vacant building when he stopped them and asked for IDs. Hale testified he was wearing his security guard uniform and badge at the time.

The testimony of Jones, Taper, and Hale was consistent that only Taper had an ID on his person. Jones and Taper explained to Hale that they were visiting Jones's sister at one of the apartments and pointed in the direction of the apartment. They could not give Hale the address. Hale checked Taper's ID and typed Taper's information into the sheblycountywarrants.org website using his smart phone. Taper had a clean record and no outstanding warrants. Jones explained that he did not have an ID because he had just gotten out of jail. However, Jones testified he told Hale he could go to his sister's apartment and get some form of identification, whether through his food stamp papers or some other identifying papers.

The testimony of Jones and Hale conflicted as to what happened next. Hale testified that he performed a pat down of Taper for Hale's own safety: it was a high-crime area, and it was dark outside. Taper was then dismissed. Before Hale could pat down Jones, Jones began to look tense, and he admitted that he had a hand gun on him. Hale attempted to handcuff Jones, Jones acted agitated and resisted, and Hale brought him to the ground and was able to secure him. Hale explained he did this to protect himself, as he was trained by the MPA. Hale found a hand gun in Jones's back pocket.

Jones, on the other hand, testified that he first gave Hale his name and date of birth so that Hale could run his

information through the warrant database on his phone without Jones's ID. Hale did so, and it indicated Jones had a criminal history but no outstanding warrants. Hale then asked whether Jones would submit to a pat down for both Hale and Jones's safety. Jones refused and stated that he had done nothing wrong. Hale again asked more aggressively to pat down Jones, and Jones again refused and began to walk away. Hale grabbed Jones and took him down. Jones testified that he did not tell Hale prior to the take-down that he had a gun on his person. Jones also testified that he was not carrying a weapon at all on the night of November 19, 2012, that Hale did not find a gun on him, and that he did not know how the gun he was charged with carrying appeared. At the time, he believed that Hale was a Memphis police officer. He testified that there were other people nearby that Hale could have stopped but did not.

Hale then held Jones in custody while he attempted to get in touch with a Memphis police officer. He flagged down Officer Zellous, who was in the Cambridge Court apartment complex on a separate domestic call.[1] Officer Zellous and Hale both testified that Officer Zellous told Hale he would first take the domestic call and would then return to Hale. Officer Zellous recalled

---

[1] Exhibit 1, Officer Zellous's Log Sheet from November 19, 2012, confirms that he was "flagged down" by Hale. The call time is listed as "2130," and the location is "3407 W. Winchester Place."

8

that Hale already had someone in custody when he was flagged down.

When Officer Zellous returned to Hale after his domestic call, he tagged the gun allegedly found on Jones and transported Jones to the Shelby County Jail. Jones was not detained that night. At the station, Officer Zellous swore out an affidavit of complaint for an arrest warrant and also completed a Record of Arrest. (Exs. 2-3.) He testified that the facts underlying both documents were based on what Hale told him because he was not present for the stop of Jones. In his testimony, Officer Zellous described himself as the "transporting officer" rather than the "arresting officer." Officer Zellous's Record of Arrest, entered into evidence as Exhibit 3, describes Hale as the "arresting officer."

On the subject of his prior dealings with Hale, Officer Zellous testified that he has responded to Hale's trespass calls in the past. He stated that Hale has never presented as law enforcement and that he had no prior contact with Hale on November 19, 2012 until he was flagged down. Hale testified consistently that he had no prior contact with Officer Zellous on that night and that he did not coordinate with him to stop Jones.

Later on November 19, 2012, Hale was required to come to the Shelby County Jail to give a witness statement. Hale

9

requested and received permission from the MPA to go off-duty to do so. He estimated it took between one and two hours. An excerpt of the witness statement was entered into evidence as Exhibit 4. When asked to describe the incident on November 19, 2012, Hale stated:

> We were patrolling the Cambridge Court Apartments, due to the high number of burglaries, when I observed two male blacks walking westbound through the complex. I stopped them to ask for ID and to see if they were residents. I asked them for identification, and Mr. Taper had ID, and I checked him for Shelby County warrants. He checked clear. I asked Omar Jones for ID, and he stated he did not have one, and that he just got out of jail. I asked him for his name, at that point, Sgt Jones, who was my partner pulled up. I advised Sgt Jones that Omar didn't have an ID, and he was acting really nervous. He was agitated, and jumpy. At that point I asked him if he had any weapons on him, and told him I was going to check him for our safety, and his. He stated that he didn't do anything wrong, we advised him that we were going to pat him down anyway. At that time Omar got really anxious and agitated, like he wanted to walk away from us. I grabbed him by his arm, then I asked him again if he had any weapons, and he stated, "I have a gun in my back pocket." I went to go detain him, and he started get tense, and I thought I might have to fight him. We took him to the ground, and placed him in cuffs. We took the handgun out of his back, right pocket, finished our pat down, and then put him in the back seat of our car. I went to go call the police, and one pulled in on another call.

(Ex. 4.)

## II. PROPOSED CONCLUSIONS OF LAW

Jones moves to suppress the physical and testimonial evidence derived from the seizure and search of Jones on the grounds that Hale acted as an agent of the Memphis Police

10

Department and violated Jones's Fourth Amendment rights. (Def.'s Mot. to Suppress, ECF No. 37.)

A private person such as Hale may be considered an agent or instrument of the government, and thus subject to the requirements of the Fourth and Fifth Amendments, in certain limited instances. *See Skinner v. Railway Labor Execs. Ass'n*, 489 U.S. 602, 614 (1989). Whether a private person's conduct is attributable to the government "turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'" *Id.* at 614-15. In making this assessment, the Sixth Circuit has applied a two-part test: "[f]irst, the police must have instigated, encouraged or participated in the search," and "[s]econd, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985); *see also United States v. Hardin*, 539 F.3d 404, 419 (6th Cir. 2008)(citing *Lambert*). More recently, the Sixth Circuit reiterated the critical factors as "'(1) the government's knowledge or acquiescence, and (2) the intent of the party performing the search.'" *Hardin*, 539 F.3d at 418 (quoting *United States v. Howard*, 752 F.2d 220, 227 (6th Cir. 1985)). When the intent of the private party "'*is entirely independent* of the government's intent of the government's intent to collect

11

evidence for use in a criminal prosecution,'" the private party does not act as an agent of the government. *Id.* (quoting the same). "Moreover, '[a] person will not be acting as a police agent merely because there was some antecedent contact between that person and the police.'" *United States v. Robinson*, 390 F.3d 853, 871-72 (6th Cir. 2004).

In the present case, there is no evidence that the MPD instigated, encouraged, or participated in the search of Jones, nor did it know of or acquiesce to Hale's search of Jones. Hale testified that his purpose in stopping Jones and Taper was to comply with the Cambridge Court Apartment policy that all persons on the property should produce an ID and give their reason for being on the property. Both Hale and Hoffman testified that this policy was in place to prevent trespass and to reduce the incidence of crime on the premises. The policy was put in place by the Cambridge Court Apartments, not the MPD, and was to be carried out by its security officers contracted through the MPA. Hale also testified that he patted down Taper and Jones for his own safety, as he was trained to do by the MPA. Jones acted "agitated," "tense," and "jumpy," which gave Jones further reason to believe the protection of his safety was necessary. Hoffman confirmed that protecting oneself was one of the most important aspects of security guard training.

Jones argues that because the MPD and MPA security officers work in the same areas and the MPA's detention of persons leads to their arrest by the MPD, MPA guards are the agents of the MPD for Fourth Amendment purposes. However, the testimony shows that the intent of Hale in complying with the Cambridge Court policy and protecting his own safety was entirely independent of any antecedent intent the government formed in collecting the evidence of Jones's firearm and arresting Jones for being a felon in possession of a firearm. Officer Zellous and Hale both testified that they had no contact prior to Hale flagging down Officer Zellous on the night of November 19, 2012, which was after Hale had already patted down and detained Jones. In fact, Officer Zellous was only incidentally on the Cambridge Court property for a separate domestic call. Officer Zellous's Log Sheet, the affidavit of complaint, the Record of Arrest, and Hale's witness statement corroborate this sequence of events. Officer Zellous's reference to Hale as the "arresting officer" in his Record of Arrest, standing alone, is not enough to show that Hale acted with the same intent as the MPD, and therefore as an agent, or that the MPD knew of and acquiesced to Hale's conduct. (*See* Ex. 3.)

Nor did Officer Zellous improperly rely on Hale's narrative to swear out an affidavit of complaint and create a Record of Arrest. Hale was the only witness to the events that led to

13

Jones's search and detention, and an affidavit of complaint may be based on hearsay or information from an informant. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978).

Based on the foregoing, Hale did not act as an agent of the MPD in patting down and detaining Jones and thus was not a state actor subject to the requirements of the Fourth Amendment. Jones's motion to suppress should therefore be denied.

III. RECOMMENDATION

For the reasons expressed above, it is recommended that Jones's motion to suppress be denied.

Respectfully submitted this 28th day of May, 2014.

s/Diane K. Vescovo  
DIANE K. VESCOVO  
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.